JAMES S. MCNEILL (SBN 201663)
E-mail: jmcneill@mckennalong.com
RUPA G. SINGH (SBN 214542)
E-mail: rsingh@mckennalong.com
MCKENNA LONG & ALDRIDGE LLP
750 B Street, Suite 3300
San Diego, CA 92101
Telephone:   (619) 595-5400
Facsimile:    (619) 595-5450

LORA A. BRZEZNSKI (*Pro Hac Vice to be submitted*)
MINDY L. CAPLAN (*Pro Hac Vice to be submitted*)
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, NW
Washington, DC 20006
Telephone:   (202) 496-7500
Facsimile:    (202) 496-7756

Attorneys for Plaintiff
LG DISPLAY CO., LTD.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LG DISPLAY CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> CHI MEI OPTROELECTRONICS CORPORATION; AU OPTRONICS CORPORATION, <br><br> Defendants. | CASE NO. 08-cv-2408 L (POR) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LG DISPLAY CO., LTD.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM, AND ATTENDANCE AT DEPOSITION BY, THIRD PARTY SONY ELECTRONICS, INC.** <br><br> Date:    January 27, 2009 <br> Time:   2:00 p.m. <br> Judge:  Hon. Louisa S. Porter <br> Courtroom: H |

**TABLE OF CONTENTS**

| | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. FACTUAL AND PROCEDURAL BACKGROUND | 1 |
|     A. The Underlying Case | 1 |
|     B. Status Of Discovery | 1 |
|     C. The Subpoena At Issue To Sony And LG Display's Meet And Confer Efforts | 1 |
| III. LEGAL STANDARDS | 4 |
|     A. Broad Construction Of Discovery Under Rule 45 | 4 |
|     B. Relevance Of Discovery In Patent Cases | 5 |
| IV. ARGUMENT | 6 |
|     A. LG Display Seeks Relevant and Discoverable Information From Sony | 6 |
|     B. Sony Is Likely The Only Source Of Much-Needed Discovery | 8 |
|     C. LG Display Has Made Numerous Efforts to Obtain Sony's Compliance Without the Court's Intervention | 9 |
|     D. The Subpoena Does Not Impose Any Undue Burdens Of Time Or Expense | 9 |
| V. CONCLUSION | 10 |

Plaintiff LG Display Co., Ltd. ("LG Display"), submits this Memorandum of Points and Authorities in Support of its Motion to Compel Production of Documents from, and Appearance at Deposition by, Third Party Sony Electronics, Inc. ("Sony").

## I. INTRODUCTION

The subpoena *duces tecum* issued by this Court and served by LG Display on Sony (the "Subpoena") fully complies with the Rule 45 of the Federal Rules of Civil Procedure and imposes no undue burden or expense on Sony. Nevertheless, Sony has refused to comply with its duties under Rule 45 without a valid excuse, and has failed to produce all responsive documents or appear for deposition. For these reasons, LG Display's Motion to Compel should be granted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Underlying Case

This case encompasses several patent infringement cases consolidated together in the District of Delaware involving twenty-three patents concerning liquid crystal display ("LCD") products and methods of manufacturing (the "Main Case"). In one of the first-filed cases, LG Display alleges that several defendants—Chi Mei Optoelectronics Corporation ("CMO"), CMO's subsidiary, Chi Mei Optoelectronics USA, Inc., AU Optronics Corporation ("AUO"), and AUO's subsidiary, AU Optronics Corporation America (collectively the "Defendants")—infringe nine patents covering a wide array of LCD technology. Eight AUO patents and six CMO patents relating to LCD technology are also at issue.

### B. Status of Discovery

Fact discovery is proceeding on these patents-in-suit, and the deadline for third party discovery has just been extended to January 30, 2009. The parties have served extensive discovery on each other and a substantial number of subpoenas to third parties, some of whom have already been deposed. The parties have also conducted depositions of some party witnesses in mid-December, and plan to depose the remaining witnesses in January 2009.

### C. The Subpoena At Issue To Sony And LG Display's Meet And Confer Efforts

LG Display served its Subpoena *duces tecum* on third party Sony on June 23, 2008. (Declaration of John W. Lomas in Support of LG Display Co., Ltd.'s Motion to Compel *et al.*

1  ("Lomas Decl.") ¶¶ 2-3; Subpoena at Attachments A & B, Ex. A to Lomas Decl.).  Sony is a
2  subsidiary of a Japanese company which manufactures various LCD products, including
3  televisions and notebooks, that incorporate defendants AUO and CMO's LCD panels.
4  (Declaration of Mindy L. Caplan in Support of LG Display Co., Ltd.'s Motion to Compel *et al*.
5  ("Caplan Decl.") ¶¶ 18-19.)  These products are sold in the U.S. at well-known retailers such as
6  Best Buy, Wal-Mart, and Circuit City.  (*Id.* ¶¶ 20-22.)[1]  The Subpoena to Sony requests a narrow
7  scope of documents and deposition testimony pertaining to Sony's business relationships; its
8  purchases of products that incorporate the Defendants' products; its U.S. sales of those products;
9  and its contracts and communications with or regarding the Defendants and their products.

10  Within a few weeks of serving its Subpoena, LG Display's counsel spoke to a paralegal
11  (Ex. A to Lomas Decl.) at Sony, extending Sony's deadline to file objections to the Subpoena
12  while Sony investigated its responsive information for production.  (Lomas Decl. ¶ 5.)  After
13  Sony informed LG Display that it did not purchase any LCD products directly from Defendants
14  on the eve of its deadline to object to the Subpoenas (*id.* ¶ 6), LG Display noted other information
15  that would be responsive, including Sony's sales, service, and/or repair of LCD products that
16  might include LCD panels manufactured by Defendants.  (*Id.* ¶ 7.)  To give Sony an opportunity
17  to continue its investigation for responsive information, LG Display agreed to continue the
18  deposition date originally set for August 8 to September 11, 2008.  (*Id.*)

19  On a call with LG Display on August 14, 2008, Sony indicated that it was collecting sales
20  data for LCD televisions, monitors, and notebooks, and that it would provide an update the
21  following week about the time, volume, and manner of expected production of responsive
22  documents.  (*Id.* ¶ 10.)  In the spirit of cooperation, and given Sony's pledge to produce
23  documents, LG Display again granted Sony an extension of time to object to the Subpoena, this
24  time until August 22, 2008.  (*Id.*)  In an email from its counsel the next day, Sony confirmed that
25  it was working on collecting sales data for televisions, computer monitors, and computers, and
26  would provide an estimate about its production the following week.  (*Id.* ¶ 11.)

---

[1] The Defendants' documents identifying and pertaining to Sony are marked "Highly Confidential" and subject to disclosure to outside counsel only; they can be produced under seal if requested by the Court.

Then, on August 22, 2008, LG Display received a voicemail and e-mail from a Vice President in Sony's Legal Department (Ronald Wasinger), stating that the attorney with whom LG Display had been dealing had to attend an unexpected urgent family matter and that Sony would file its objections the following week. (*Id.* ¶¶ 12-13.) Instead of giving the promised update on the progress of Sony's production, Mr. Wasinger reversed course on Sony's pledges to collect and produce responsive documents, and claimed that Sony's collection efforts had only been for internal analysis of any potential production. (*Id.*) LG Display again explained that its extensions of Sony's deadline to file objections was granted based on the understanding that Sony would provide an update on its production during the week of August 18 and produce responsive documents shortly afterwards. (*Id.* ¶ 14.) Providing information about LG Display's claims against Defendants and about the protections in place for third-party confidential information, LG Display then requested an update on Sony's production by August 27, 2008. (*Id.*)

Sony served written objections to the Subpoena the next day, but provided no update on the status of its compliance with the Subpoena. (*Id.* ¶ 15.) Sony's counsel also did not respond to LG Display's call on August 28, 2008 or follow up e-mail on September 16, 2008. (*Id.* ¶¶ 16-17.) Ten days later, on September 26, 2008, Sony informed LG Display that local counsel in Delaware had advised Sony not to produce documents without an appropriate protective order and asked why LG Display could not obtain this discovery from the Defendants. (*Id.* ¶ 18.)

LG Display was unable to respond to Sony while briefing and preparing for the Markman claim construction hearing on multiple terms for numerous claims in all 23 patents-in-suit, which hearing was originally scheduled for September 18, 2008 and later postponed to October 15, 2008. Subsequently, LG Display was also preoccupied with investigating the Defendant's production, and preparing motions to compel documents from Defendant's.

In early November 2008, several months after Sony had pledged to produce responsive documents, LG Display again requested an update on Sony's production and provided Sony with the relevant protective order documents for third party production. (Caplan Decl. ¶ 2.) After receiving no response, LG Display contacted Sony again the next week, notifying it of the then-scheduled fact discovery deadline of December 17, 2008, but still received no response. (*Id.* ¶ 3.)

In late November, LG Display sent a letter to Sony in yet another attempt to elicit a response, and made itself available until December 1 for meet and confer while notifying Sony that it would have to seek the Court's intervention after that. (*Id.* ¶ 4.) On the afternoon of December 2, Sony finally contacted LG Display's counsel, but only to again request documentation regarding protections afforded to third parties' confidential information, which LG Display promptly sent for a second time. (*Id.* ¶¶ 8-11.) Sony then said that it would have to review the protective order and continue discussing internally what it may be able to produce. (*Id* ¶ 11.)

After being notified that LG Display would delay filing a motion to compel if Sony provided a final response by noon on December 4, Sony sent LG Display an after-hours letter stating that it would produce certain procurement data for stand-alone monitors purchased from AUO and LG Display. (*Id.* ¶¶ 12-13.) Because such procurement data constitutes only a portion of the information sought in LG Display's Subpoena, LG Display contacted Sony on December 8 and December 12 but received no response (*Id.* ¶¶ 14-15). After another email to Sony on December 22, 2008, requesting confirmation that it would produce all responsive information by December 31, 2008, LG Display was told that Sony was shut down until January 5, 2009, and would only produce limited procurement information, when it re-opened. (*Id.* ¶¶ 16-17.) This left LG Display with no recourse but to file the instant Motion.

### III.  LEGAL STANDARDS

#### A.  Broad Construction Of Discovery Under Rule 45

Rule 45 of the Federal Rules of Civil Procedure expressly authorizes a party to issue a subpoena commanding the person to whom it is directed to attend and give testimony or to produce and permit inspection of designated records. Fed. R. Civ. P. 45(a)(1)(C). If the third party serves timely objections to the subpoena, the serving party can move to compel production or inspection with notice to the objecting party. Fed. R. Civ. P. 45(c)(2)(B)(i).

It is well settled that "the scope of discovery under a [Rule 45] subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34." *Kona Spring Water Distrib., Ltd. v. World Triathlon Corp.*, 2006 WL 905517, at *2 (M.D. Fla. Apr. 7, 2006); *accord Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325-26 (Fed. Cir. 1990). Under Rule 26(b), parties "may obtain

1  discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—
2  including the existence, description, nature, custody, condition, and location of any documents or
3  other tangible things and the identity and location of persons who know of any discoverable
4  matter." Fed. R. Civ. P. 26(b)(1).  "Patent infringement cases are not exceptions to the rule that
5  discovery is liberal and relevancy is broadly construed." *Murata Mfg. Co. v. Bel Fuse, Inc.*, 422
6  F. Supp. 2d 934, 945 (N.D. Ill. Mar. 14, 2006) (citing *Katz v. Batavia Marine & Sporting*
7  *Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993)).

8       As courts have recognized, a court that "does not have the benefit of involvement with the
9  underlying litigation," and whose "only connection with a case is supervision of discovery
10 ancillary to an action in another district should be especially hesitant to pass judgment on what
11 constitutes relevant evidence thereunder." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680-81
12 (citing *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211-12 (Fed. Cir. 1987)).

13      If the subpoena is proper, then the person on whom the subpoena was served is duty
14 bound, if so instructed, to appear for deposition and produce requested documents. *See* Fed. R.
15 Civ. P. 45(a).  Indeed, "[t]he party resisting discovery has the burden to show that the requested
16 discovery is not relevant and that the production of such discovery would be unduly
17 burdensome." *Benavides v. Velocity IQ, Inc.*, 2006 WL 680656, at *2 (M.D. Fla. Mar. 15, 2006)
18 (citations omitted).

19      **B.**    **Relevance Of Discovery In Patent Cases**

20      Relevant discovery in patent cases encompasses claims for direct infringement or
21 inducement of infringement.  Inducement liability can arise from acts either inside or outside the
22 United States, including making and selling infringing products in the U.S. market or a foreign
23 country.  Conduct relevant to inducement includes, for example, selling or supplying infringing
24 products for resale; promoting the infringing products in communications and presentations with
25 knowledge that customers will import and sell products in the U.S.; having authorized return and
26 repair centers in the U.S.; providing technical support in the U.S.; shipping products to U.S.
27 customers to fix technical problems; giving on-site technical presentations in the U.S.; adjusting
28 manufacturing processes based on customer concerns; coordinating shipping to and for the U.S.

1  market; and making products in accordance with U.S. laws and regulations. *See generally Semiconductor Energy Lab. Co. v. Chi Mei Optoelectronics Corp.*, 531 F. Supp. 2d 1084, 1113-14 (N.D. Cal. 20007); *Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 409-11 (S.D.N.Y. 2007); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369 at 1378-80 (Fed. Cir. 2005); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351 (Fed. Cir. 2001); *02 Micro Int'l Ltd. v. Sumida Corp.*, 2006 WL 981987, at *2 (E.D. Tex. April 12, 2006).

## IV. ARGUMENT

LG Display's Subpoena to Sony is narrowly tailored to seek relevant information for the Main Case, which is likely to be in Sony's sole possession. Moreover, LG Display has tried repeatedly to cooperate with Sony to allow it to respond to the subpoena without involving the Court. Finally, the Subpoena complies with the restrictions of Rule 45 and imposes no undue burden or expense on Sony. Yet Sony refuses to produce all responsive information and documents without a valid reason to justify its non-compliance. Thus, this Motion to Compel is LG Display's last resort to obtain necessary discovery from Sony, and the Court should grant it.

### A. LG Display Seeks Relevant Discoverable Information From Sony

LG Display is seeking discovery from Sony in an effort to establish its patent infringement and inducement claims against the Defendants in the Main Case. Evidence from Sony concerning its interactions with any of the Defendants is likely to be extremely valuable to and highly probative of LG Display's inducement claims. *See e.g. MEMC Elec.*, 420 F.3d at 1379-80 (provision of technical support services can establish inducement claim). As the district court in Delaware recently noted, North America represents a significant portion of the worldwide market for LCD televisions and monitors. *LG.Philips LCD Co. v. Chi Mei Optoelectronics Corp.*, 551 F. Supp. 2d 333, 336, 340 (D. Del. 2008). The Defendants here target the U.S. market and supply major U.S. customers and brands. Under 35 U.S.C. § 271, the Defendants are liable as infringers if they induce—or aid, abet or encourage—direct infringement by a third party. *See E.I. DuPont De Nemours and Co. v. Monsanto Co.*, 903 F. Supp. 680, 736 (D. Del. 1995). Defendants are therefore liable for any infringing products that they encouraged

or otherwise induced to be imported, offered for sale, sold or used in or into the United States. Thus, the discovery sought from Sony is relevant to LG Display's claims.

In another patent infringement case against defendant AUO, the District Court concluded that evidence of AUO's conduct and intent was sufficient to require a jury determination of its inducement of infringement by others. *Sharp Corp. v. AU Optronics Corp.*, 2005 WL 1457747, *1 (N.D. Cal. June 20, 2005). In that case, the Court concluded that AUO purposefully worked with third party customers to supply infringing AUO modules for U.S. consumer products:

> Specifically, plaintiff has offered evidence that defendants [including AUO], with knowledge of plaintiff's patents, marketed their allegedly infringing component products to U.S. companies interested in purchasing finished products incorporating such components, and that defendants sold such allegedly infringing component products to non-U.S. companies, knowing those non-U.S. customers intended to incorporate defendants' component products into the finished products those non-U.S. companies sell directly to the above-referenced U.S. companies.

*Id.* (internal citations omitted). Thus, a triable issue of fact was found to exist on the issue of inducement when plaintiff offered evidence that the defendant intended to induce its customers outside the U.S. to sell infringing products in the U.S. *Id.* Thus is the same as what LG Display is trying to establish here, based partly on discovery from Sony.

Similarly, defendant CMO has well-established distribution channels that it uses to exploit the enormous U.S. market for LCD products. Indeed, as the Delaware Court in the Main Case concluded, there is evidence that "CMO's modules are sold to OEMs such as Samsung, Dell, IBM, Hewlett Packard, NEC-Mitsubishi, and Viewsonic, and incorporated into computer monitors which are then sold to consumers by numerous retailers, including Best Buy, CompUSA, Circuit City, Wal-Mart, Sears, Staples, and OfficeMax, both on-line over the internet, and at chain retail stores throughout the United States, including Delaware." *LG.Philips LCD Co.*, 551 F. Supp. 2d at 336 (internal citations omitted). In denying defendant CMO's motion to dismiss for lack of personal jurisdiction in the Main Case, the Delaware Court determined that "CMO clearly acted in consort with Dell Corporation and OEMs to consistently place products containing its allegedly infringing LCD modules into a national distribution network[.]" *Id.* at 339.

Defendants here have targeted and exploited the U.S. market for infringing products and the Subpoena to Sony seeks information showing that the Defendant's have imported, sold, and used their products in the United States—activities which infringe on LG Display's U.S. patents and support its claims of infringement or inducement of infringement under 35 U.S.C. § 271. Sony is also likely to have the following relevant documents: purchase reports and/or summaries tracking the purchase of LCD panels either directly from the Defendants or indirectly through original equipment manufacturers ("OEMs"); reports and/or summaries for all U.S. sales of LCD products that incorporate the Defendants' panels; and communications, contracts or other agreements between Sony and the Defendants about the sale and marketing of the Defendants' products. Sony's employees also should have knowledge of the manner in which Sony conducts or conducted business with the Defendants and their customers in the United States. All this information will assist LG Display in its patent infringement and inducement claims against the Defendants and allow it to verify whether the Defendants' document productions are complete and accurate. *See generally MEMC Elec.,* 420 F.3d 1369.

### B. Sony Is Likely The Only Source Of Much-Needed Discovery

It is also likely that relevant information is solely in Sony's possession, such as its U.S. sales figures. To date, Defendants have provided significant discovery to LG Display but have refused to provide certain information regarding the sale of their products in the United States. The omitted discovery includes information linking the sale of Defendants' products to companies such as Sony, which sells to large retailers such as Best Buy, Wal-Mart, and Circuit City. LG Display needs this discovery from Sony to test the accuracy and completeness of Defendants' discovery responses as well as their denials that additional information exists. This discovery is also relevant to the extent that it relates to information that may be used to impeach Defendants at trial. *See Micro Motion*, 894 F.2d at 1326 (subpoena may seek to flesh out a pattern of facts already known to a party because such information is "clearly" relevant); Fed. R. Evid. 401. If ordered to comply with the Subpoena, Sony will more than likely provide new and valuable insights into the volume of sales made to the U.S., the manner in which the Defendants conduct business in the U.S., and Defendants' efforts to market their products to U.S. consumers.

### C. LG Display Has Made Numerous Efforts To Obtain Sony's Compliance Without The Court's Intervention

As discussed above and in exhaustive detail in its counsels' accompanying declarations, LG Display has gone to great lengths to encourage Sony to voluntarily comply with the Subpoena. Notably, after serving the Subpoena, and consistent with its Rule 45 obligations, LG Display has tried to negotiate with Sony in an effort to reduce any burdens imposed by the Subpoena. (Caplan Decl. ¶¶ 2-17; Lomas Decl. ¶¶ 5-18); *cf.* Fed. R. Civ. P. 45(c)(1). LG Display has also provided assurances to Sony that its confidential information would be protected. However, after obtaining extensions to submit objections to the Subpoena based on promises to produce all responsive information, Sony has refused to take a reasonable approach to searching for and producing responsive documents or appearing for deposition. Having exhausted its good faith efforts, LG Display needs this Court's intervention to compel Sony's compliance with the Subpoena.

### D. The Subpoena Does Not Impose Any Undue Burdens Of Time Or Expense

The Subpoena provided plenty of time for Sony to comply. It was served on June 23, 2008 and originally gave Sony nearly one month to respond. (*Id.* ¶¶ 2-3.) Now, five months after the initial due date, Sony has yet to comply, despite its previous representations. Meanwhile, LG Display is faced with a fast-approaching, rescheduled January 30, 2009 discovery deadline in the Main Case, and must both preserve its rights and obtain Sony's immediate compliance.

The Subpoena also does not impose any other undue burdens on Sony. Any confidentiality concerns that Sony may have are ameliorated by the protections in place in the Main Case with respect to the limited disclosure of confidential documents produced by third parties. (Caplan Decl. ¶ 2.) Sony cannot complain about the scope of the Subpoena when it previously represented that it was preparing to produce documents and then simply refused to do so. Interestingly, the procurement data that Sony has offered to produce contradicts its earlier representation that it does not purchase any LCD products directly from AUO (*see* Lomas Decl. ¶ 6), and shows that Sony does have responsive information that is not unduly burdensome to produce.

LG Display served nearly identical subpoenas on other companies in the U.S. that are either known or reasonably believed to have sold products in the U.S. that incorporate the Defendants' LCD products. Unlike with Sony, LG Display has reached agreements with several of these companies who have subsequently produced documents responsive to the subpoenas in accordance with their obligations under Rule 45. Other third parties' voluntary compliance with similar discovery supports a finding that LG Display has narrowly tailored its subpoenas and reasonably negotiates with third parties to minimize their compliance burden.

## V. CONCLUSION

As established above, the discovery sought is both relevant and necessary, does not impose any undue burden or expense, and was preceded by LG Display's reasonable efforts to work with Sony. Yet, Sony has inexplicably refused full compliance with the Subpoena without justification. This Court should end Sony's delay, compel it to produce all responsive documents, and order it to appear for deposition as soon as reasonably possible.

Dated:  December 30, 2008      Respectfully submitted,

MCKENNA LONG & ALDRIDGE LLP


  s/James S. McNeill
James S. McNeill

Attorneys for Plaintiff LG DISPLAY CO., LTD.
E-mail:  jmcneill@mckennalong.com

SD:22170415.5